IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VENCIL GREEN,<br><br>  Plaintiff,<br><br>  v.<br><br>NASARIA CHAMBERLAIN, et al.,<br><br>  Defendants. | No. 2:19-CV-0109-WBS-DMC-P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's complaint (ECF No. 1). Plaintiff alleges violations of his Eighth, First, and Fourteenth Amendment rights.

On July 23, 2019, the court issued a screening order addressing the sufficiency of plaintiff's allegations. See ECF No. 12. In that order, the court concluded plaintiff's complaint alleges sufficient facts to proceed against defendants Stein, Reynolds, Chamberlain, Bennett, Early, and Tozi on his claims of retaliation in violation of the First Amendment. See id. at 5. The court found the remainder of plaintiff's allegations insufficient to state any other claims against any other defendants, but provided plaintiff an opportunity to file a first amend to cure the defects identified by the court. See id. at 16. On July 31, 2019, plaintiff filed a notice declining to file a

/ / /

/ / /

first amended complaint and seeking to proceeds instead of the cognizable claims presented in the original complaint. See ECF No. 13. By separate order, the court has directed plaintiff to submit documents necessary for service of the original complaint on defendants Stein, Reynolds, Chamberlain, Bennett, Early, and Tozi. The court herein recommends dismissal of all other claims and defendants.

In the July 23, 2019, screening order, the court summarized plaintiff's allegations and claims as follows:

> Plaintiff names the following as defendants: (1) Nasaria Chamberlain, a prison superintendent; (2) Lori Stein, a supervisor of the Prison Industry Authority (PIA); (3) Charlotte Reynolds, a prison superintendent; (4) Phillip Earley, a PIA administrator; (5) Brad Smith, a PIA administrator; (6) T. Tozi, a prison superintendent; (7) D. Conlon, a correctional officer; (8) R. Bennett, a correctional officer; (9) J. Lizarraga, the prison warden; (10) K. Rogers, a correctional lieutenant; (11) C. Heintscel, a correctional captain; (12) J. Feltner, a correctional sergeant; (13) M. Voong, Chief of the CDCR Third Level Appeals; and (14) R. Roy, as associate prison warden. Plaintiff alleges the following:
>
> In October 2017, Plaintiff informed his work supervisor, Defendant Stein, that his broken chair caused him pain. See ECF No. 1, p. 7. Defendant Stein ignored Plaintiff's concerns. Plaintiff then filed a grievance with the prison and a report with the Department of Industrial Relations, Division of Occupational Safety and Health. Defendant Stein, shortly thereafter, filed a false Rules Violation Report (RVR) and admitted it was in response to Plaintiff's grievance. See id. at 7-8, 21.
>
> A few days later, Defendant Earley interviewed Plaintiff about the grievance but later "disappeared." See id. at 10. Defendant Earley's disappearance obstructed Plaintiff's ability to appeal his grievances in violation of California Code of Regulations. See id. Not until Plaintiff's wife wrote a citizens complaint did Defendant Lizarraga urge Defendant Earley to process Plaintiff's grievances. See id.
>
> In December, Defendant Chamberlain submitted a falsified RVR after telling Plaintiff she was tired of his grievances. See id. at 10-11. Shortly thereafter, Plaintiff reported Defendant Chamberlain to Defendant Conlon for shoving Plaintiff's desk at work. See id. at 12. Defendants Tozi and Earley heard Plaintiff's grievance but took no action. See id. The following day, Defendants Chamberlain and Conlon asked to meet with Plaintiff, but he refused. See id. at 13-14. Defendant Conlon attempted to provoke Plaintiff by calling him a rapist in front of other inmates. See id. at 14. Other inmates also witnessed Defendant Conlon coaching Defendant Chamberlain on the computer. See id. Plaintiff alleges the two conspired to retaliate by falsifying another RVR. See id.
>
> Because of the false RVRs, Plaintiff could not return to his previous work assignment. See id. at 15. Defendant Earley assigned Plaintiff to a new job allegedly in violation of the California Code of Regulations. See id. On his first day of work, his new supervisor, Defendant Reynolds, told Plaintiff not to file grievances. See id. at 16. Plaintiff later heard Defendant Reynolds tell another inmate that Plaintiff had snitched on Defendant Reynolds. See id. Plaintiff alleges Defendant

Reynolds was having an illicit sexual relationship with another inmate, Hersey, for whom she was smuggling in heroin and cellphones. See id. Plaintiff filed a grievance against Defendant Reynolds's illicit activity and asserting she was deliberately indifferent to his safety by labeling him a snitch. See id. at 17. Defendant Reynolds falsified a work report shortly after that. See id. On June 13, Defendant Reynolds verbally accosted Plaintiff, during which time she again called Plaintiff a "snitch" in front of other inmates. See id. at 18. Defendant Reynolds filed an RVR in which she falsified Defendant Bennett's presence at the scene of the altercation. See id. In return, Plaintiff filed a grievance against Defendant Reynolds and her supervisors, Defendant Tozi and Defendant Smith. See id.

Before Plaintiff's disciplinary hearing regarding the June 13 incident, Plaintiff asked Defendant Bennett to appear on his behalf and testify that he was not present during the altercation, contrary to Defendant Reynolds's RVR. See id. at 18-19. Defendant Bennett told Plaintiff he should not have reported Defendant Reynolds's sexual relationship with inmate- Hersey. See id. at 19. At Plaintiff's disciplinary hearing, Defendant Bennett allegedly lied and testified that he was present during the June 13 incident. See id. The disciplinary committee found Plaintiff guilty and restricted him from his work assignment. See id.

Based on these factual allegations, Plaintiff raises the following claims: (1) Defendants violated his First Amendment rights by retaliating against Plaintiff for filing grievances and by failing to intervene in the unconstitutional acts of their subordinates; (2) Defendants' retaliations resulted in various violations of Plaintiff's Fourteenth Amendment right to due process; (3) Defendants were deliberately indifferent to his safety in violation of his Eighth Amendment rights; and (4) Defendant Earley violated the California Code of Regulations by interfering with Plaintiff's appeals process and impermissibly transferring Plaintiff's work assignment.

ECF No. 12, pgs. 2-4.

As to plaintiff's claims against defendant Conlon, the court stated:

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

> As to the chilling effect, the Ninth Circuit in <u>Rhodes</u> observed: "If Rhodes had not alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm that is more than minimal will almost always have a chilling effect." <u>Id.</u> at n.11. By way of example, the court cited <u>Pratt</u> in which a retaliation claim had been decided without discussing chilling. <u>See id.</u> This citation is somewhat confusing in that the court in <u>Pratt</u> had no reason to discuss chilling because it concluded that the plaintiff could not prove the absence of legitimate penological interests. <u>See Pratt</u>, 65 F.3d at 808-09. Nonetheless, while the court has clearly stated that one of the "basic elements" of a First Amendment retaliation claim is that the adverse action "chilled the inmates exercise of his First Amendment rights," <u>id.</u> at 567-68, <u>see also Resnick</u>, 213 F.3d at 449, the comment in <u>Rhodes</u> at footnote 11 suggests that adverse action which is more than minimal satisfies this element.
>
> * * *
>
> It is unclear if Plaintiff intends to allege First or Eighth Amendment claims against Defendant Conlon. Plaintiff states, after his verbal altercation with Defendant Chamberlain over grievances, Defendant Conlon said, "[I] told [you] to stop filing grievances." <u>See</u> ECF No. 1, p. 14. In the same interaction, Plaintiff claims Defendant Conlon falsely called Plaintiff a rapist in front of other inmates. <u>See id.</u> To the extent Plaintiff intends to allege a retaliation claim against Defendant Conlon for calling him a rapist, Plaintiff fails to state a claim. Since this act did not chill Plaintiff's right to file grievances, he must show a harm that is more than minimal. Plaintiff, however, has failed to establish any harm resulting from being called a rapist. Because there is insufficient harm alleged to compensate for the lack of the chilling effect, Plaintiff fails to state a valid claim against Defendant Conlon.

ECF No. 12, pgs. 4-6.

Next regarding the liability of supervisory defendants, the court concluded the complaint states cognizable retaliation claims against defendants Early and Tozi. <u>See id.</u> at 7-8. The court, however, concluded the complaint is insufficient as against defendants Smith, Rogers, Heintscel, Voong, Roy, Lizarraga, and Feltner. <u>See id.</u> at 6-9. The court addressed plaintiff's claims against these defendants as follows:

> Plaintiff alleges supervisory Defendants Tozi, Earley, Smith, Rogers, Heintscel, Voong, Roy, Lizarraga, and Feltner, through Plaintiff's complaints and grievances, had knowledge of Defendant Chamberlain's and Reynolds's retaliatory conduct but failed to intervene. <u>See id.</u> at 20. Supervisors are generally not liable under § 1983 for the actions of their employees. <u>See Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. <u>See id.</u> Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving

force behind a constitutional violation may, however, be liable even where such personnel do not overtly participate in the offensive act. See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc). Liability, however, can also arise from a supervisor's inaction. "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." Starr v. Baca, 652 F.3d 1202, 1208 (9th Cir. 2011) (quoting Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998) (internal alteration and quotation marks omitted))

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 662 U.S. at 676.

* * *

. . .Plaintiff fails to sufficiently raise a claim against Defendant Smith. Plaintiff appears to allege a duty to intervene against Defendant Smith solely based on his status as Defendant Chamberlain's supervisor. See id. at 18. This is insufficient to state a claim against Defendant Smith. There are no allegations that Defendant Smith knew of Plaintiff's grievances or personally participated in the violation of Plaintiff's constitutional rights. Thus, Plaintiff's claim against Defendant Smith cannot pass screening.

Turning next to Defendants Rogers, Heintscel, Voong, and Roy. Plaintiff's first and only allegation related to these Defendants asserts liability for having knowledge of their subordinates' unconstitutional conduct. See id. at 20. These allegations, however, are vague and conclusory. The complaint provides no additional facts to support an inference of knowledge on behalf of these Defendants. The Court cannot infer, by their supervisory status alone, that Defendants knew of Plaintiff's complaints and grievances. Furthermore, the complaint does not allege Defendants promulgated unconstitutional prison customs or policies. Because Plaintiff fails to allege how Defendants' personal conduct violated his rights, Plaintiff has failed to state a cognizable claim.

As to Defendant Lizarraga, Plaintiff only alleges Defendant Lizarraga knew of the ongoing "corruption" at Mule Creek, including Defendant Earley's obstruction to Plaintiff's appeal's process, and did nothing. See id. at 10. However, Plaintiff's complaint concedes Defendants Lizarraga pushed Defendant Earley to process Plaintiff's complaint after the six-month delay. See id. Thus, this Court cannot agree that Plaintiff's vague assertion of corruption sufficiently alleges Defendant Lizarraga acquiesced to the alleged unconstitutional conduct of his subordinates. Beyond this, Plaintiff fails to show Defendant Lizarraga personally participated or directed unconstitutional policies or conduct of others.

///

>           Finally, Plaintiff does not state a cognizable legal claim
> against Defendant Feltner. Plaintiff only alleges Defendant Feltner asked
> Plaintiff about Defendant Reynolds's involvement with inmate-Hersey
> and then took Plaintiff to give a recorded statement. <u>See id.</u> at 17.
> Plaintiff later includes Defendant Feltner in his list of supervisory
> defendants who knew of the retaliations by Defendants Chamberlain and
> Reynolds. <u>See id.</u> at 20. The complaint, however, does not support this
> conclusion. There are insufficient allegations regarding Defendant
> Feltner's participation in the violation of Plaintiff's rights or the
> knowledge of his subordinates' conduct to state a claim for relief.
>
> ECF No. 12, pgs. 6-9.

Next, the court addressed plaintiff's allegations that the various acts of retaliation also violated his due process rights under the Fourteenth Amendment:

>           The Due Process Clause protects prisoners from being
> deprived of life, liberty, or property without due process of law. <u>Wolff v.
> McDonnell</u>, 418 U.S. 539, 556 (1974). In order to state a claim of
> deprivation of due process, a plaintiff must allege the existence of a liberty
> or property interest for which the protection is sought. <u>See Ingraham v.
> Wright</u>, 430 U.S. 651, 672 (1977); <u>Bd. of Regents v. Roth</u>, 408 U.S. 564,
> 569 (1972).
>           Liberty interests can arise both from the Constitution and
> from state law. <u>See Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983); <u>Meachum
> v. Fano</u>, 427 U.S. 215, 224-27 (1976); <u>Smith v. Sumner</u>, 994 F.2d 1401,
> 1405 (9th Cir. 1993). In determining whether the Constitution itself
> protects a liberty interest, the court should consider whether the practice in
> question ". . . is within the normal limits or range of custody which the
> conviction has authorized the State to impose." <u>Wolff</u>, 418 U.S. at 557-
> 58; <u>Smith</u>, 994 F.2d at 1405. Applying this standard, the Supreme Court
> has concluded that the Constitution itself provides no liberty interest in
> good-time credits, <u>see Wolff</u>, 418 U.S. at 557; in remaining in the general
> population, <u>see Sandin v. Conner</u>, 515 U.S. 472, 485-86 (1995); in not
> losing privileges, <u>see Baxter v. Palmigiano</u>, 425 U.S. 308, 323 (1976); in
> staying at a particular institution, <u>see Meachum</u>, 427 U.S. at 225-27; or in
> remaining in a prison in a particular state, <u>see Olim v. Wakinekona</u>, 461
> U.S. 238, 245-47 (1983).
>           Where a prisoner alleges the deprivation of a liberty or
> property interest caused by the random and unauthorized action of a prison
> official, there is no claim cognizable under 42 U.S.C. § 1983 if the state
> provides an adequate post-deprivation remedy. <u>See Zinermon v. Burch</u>,
> 494 U.S. 113, 129-32 (1990); <u>Hudson v. Palmer</u>, 468 U.S. 517, 533
> (1984). A state's post-deprivation remedy may be adequate even though it
> does not provide relief identical to that available under § 1983. <u>See
> Hudson</u>, 468 U.S. at 531 n.11.
>           Finally, with respect to prison disciplinary proceedings, due
> process requires prison officials to provide the inmate with: (1) a written
> statement at least 24 hours before the disciplinary hearing that includes the
> charges, a description of the evidence against the inmate, and an
> explanation for the disciplinary action taken; (2) an opportunity to present
> documentary evidence and call witnesses, unless calling witnesses would
> interfere with institutional security; and (3) legal assistance where the

charges are complex or the inmate is illiterate. See Wolff, 418 U.S. at 563-70. Due process is satisfied where these minimum requirements have been met, see Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), and where there is "some evidence" in the record as a whole which supports the decision of the hearing officer, see Superintendent v. Hill, 472 U.S. 445, 455 (1985). The "some evidence" standard is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached." Id. at 455-56. However, a due process claim challenging the loss of good-time credits as a result of an adverse prison disciplinary finding is not cognizable under § 1983 and must be raised by way of habeas corpus. See Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir. 1997).

Here, Plaintiff vaguely alleges violations of his Fourteenth Amendment rights. While this Court has done its best to ascertain which allegations, if any, could support a cognizable claim, it finds Plaintiff failed to articulate any violation of a legitimate liberty interest. To the extent Plaintiff alleges violations of his due process rights based on the handling of his grievances, false RVRs, false witness testimony, and loss of job assignment and wages, Plaintiff fails to state a claim because Plaintiff identifies no protected liberty interest.

Plaintiff's dissatisfaction with the handling of his grievances does not state a liberty interest. The Ninth Circuit has held that prisoners have no due process rights related to the grievance process. See, e.g., Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). For this reason, failing to process a prisoner's grievance is not a violation of due process. See Cage v. Cambria, 1996 WL 506863 (N.D. Cal. Aug. 16, 1996) (concluding that prison officials' failure to properly process or address grievances does not support a constitutional claim). Furthermore, false RVRs do not implicate any due process rights. See Canovas v. California Dept. of Corr., 2014 WL 5699750, n.2 (E.D. Cal. Oct. 30, 2014). Likewise, prisoners receive limited due process rights to their disciplinary hearings. False testimony by a witness does not implicate a violation of the due process owed to prisoners under Wolff. See Scott v. Arvizo, 2018 WL 6604345 (E.D. Cal. Dec. 16, 2018). Plaintiff's claims about his work assignment and lost wages similarly lack merit. See Walker v. Gomez, 370 F.3d 969, 973 (9th Cir. 2004) (reasoning the Due Process Clause of the Fourteenth Amendment does not create a liberty interest in prison employment).

ECF No. 12, pgs. 9-11.


Finally, the court addressed plaintiff's Eighth Amendment claims:

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d

7

1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Under these principles, prison officials have a duty to take reasonable steps to protect inmates from physical abuse. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833. Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. See Farmer, 511 U.S. at 837. The very obviousness of the risk may suffice to establish the knowledge element. See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. See Farmer, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted. See Farmer, 511 U.S. at 844.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

Here, Plaintiff fails to allege a cognizable Eighth Amendment claim against any Defendant. As to Defendant Reynolds, Plaintiff states she called him a "snitch" in front of other inmates. While the Ninth Circuit held in Valandingham v. Bojorquez that calling an inmate a "snitch" may violate one's right to be protected from violence while in custody, it did so, in part, because the plaintiff subsequently received threats of violence from other inmates. F.2d 1135, 1139 (9th Cir. 1989). The Ninth Circuit later held Eighth Amendment claims based on a defendant's words must allege the plaintiff was subjected to retaliation or threats of retaliation at the hands of other inmates. See Morgan v. MacDonald, 41 F.3d 1291, 1294 (9th Cir. 1994). The plaintiff must also assert prison officials were aware that their actions exposed the prisoner to a substantial risk of serious harm. See id. Here, although Plaintiff alleges he was called a "snitch," he does not sufficiently allege he was

subsequently subjected to retaliation or threats of retaliation by other inmates because he was called a snitch. Plaintiff does allege there was a rumor Defendant Reynolds and inmate-Hersey were offering a reward to anyone willing to assault Plaintiff. See ECF No. 1, p. 20. This is not, however, a sufficient threat of retaliation from another inmate. Thus, there are no allegations that Plaintiff's fellow inmates retaliated against him, nor is there any basis for inferring Defendant Reynolds was aware that her actions exposed Plaintiff to a substantial risk of serious harm.

Plaintiff also alleges Defendant Conlon called him a rapist, but this claim fails for reasons similar to his claim against Defendant Reynolds. Plaintiff fails to meet the objective prong of the deliberate indifference standard by failing to assert Defendant Conlon exposed Plaintiff to an excessive risk of harm by calling him a rapist. Plaintiff also does not allege Defendant Conlon subjectively knew of this risk and disregarded it. Furthermore, Plaintiff establishes no connection between being called a rapist and a resulting threat to his safety. See Mack v. Hubbard, 2014 U.S. Dist. LEXIS 9777 (E.D. Cal. Jan. 24, 2014) (holding plaintiff failed to state a cognizable Eighth Amendment claim for being called a rapist by prison guards because plaintiff failed to establish a nexus between the unlawful conduct and the perceived threat to plaintiff's safety required to support a showing of deliberate indifference); Morris v. Newland, 2007 U.S. Dist. LEXIS 15725 (E.D. Cal. Mar. 6, 2007) (holding defendant's act of calling plaintiff a rapist did not rise to the level of an Eighth Amendment violation because it had no alleged impact beyond making it difficult for plaintiff to associate with his peers). To state a cognizable claim, Plaintiff would have to allege that being called a "rapist" put him at an excessive risk of danger, and Defendant Conlon knew of this danger and acted in spite of it.

Plaintiff further alleges Defendants Tozi, Earley, and Smith were "deliberately indifferent" to his concerns over the retaliatory actions of Defendant Chamberlain. To the extent he intends to allege Eighth Amendment claims against these Defendants, Plaintiff fails to state a cognizable claim. Plaintiff's claims of deliberate indifference arise from his concerns over Defendant Chamberlain's retaliations, not his safety. Plaintiff does not allege Defendants were aware of an excessive risk to his safety or health and subsequently disregarded this risk. Instead, Plaintiff's claims read more like dissatisfaction with the grievance process or a failure to intervene. Neither of these, however, have any connection with Plaintiff's safety or a perceived risk of harm. Thus, to the extent Plaintiff asserts Eighth Amendment claims against Defendants Tozi, Earley, and Smith, the claims cannot pass screening.

Plaintiff additionally alleges Defendant Stein was deliberately indifferent to Plaintiff's concerns over his painful work chair. However, "[t]he Constitution 'does not mandate comfortable prisons.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes, 452 U.S. at 349). While Plaintiff alleges Defendant Stein knew the chair caused him pain, the complaint does not sufficiently assert the chair posed an excessive risk of harm or risk of injury to Plaintiff. Plaintiff states the chair was "hazardly [sic] digging into his lower back causing pain and injury." This circuit, however, in finding defective devices may support Eighth Amendment claims, has done so in situations where a prison or work condition "exacerbated the inherent dangerousness of an already-existing hazard, such that those hazards 'seriously threatened the safety and security of inmates.'" Osolinski v. Kane, 92 F.3d 934, 938 (9th Cir. 1996) (quoting Hoptowit v. Spellman, 753 F.2d 779, 784 (9th Cir. 1985).

9

> However, there is a void of allegations indicating Plaintiff's safety and security was at risk.
>
> Additionally, it is unclear whether Plaintiff's Eighth Amendment claim against Defendant Stein intends to allege deliberate indifference to his safety or deliberate indifference that amounts to a denial of medical care. To the extent he intends to raise a denial of medical care claim, he has not demonstrated his injury or risk of injury was sufficiently serious, impacting his daily activities, or reasonably worthy of comment by a doctor. Defendant Stein's inaction does not rise to the level of an Eighth Amendment violation.

ECF No. 2, pgs. 11-15.

Plaintiff was provided an opportunity to file a first amended complaint addressing the deficiencies outlined above. See id. at 16. Plaintiff filed a notice declining to do so. See ECF No. 13.

Based on the foregoing, the undersigned recommends that:

1. Plaintiff's retaliation claims be dismissed as against defendants Conlon, Smith, Rogers, Heintscel, Voong, Roy, Lizarraga, and Feltner;

2. Plaintiff's due process and Eighth Amendment claims be dismissed as against all defendants;

3. The Clerk of the Court be directed to terminate Conlon, Smith, Rogers, Heintscel, Voong, Roy, Lizarraga, and Feltner as defendants to this action; and

4. The action proceed on plaintiff's original complaint on plaintiff's retaliation claims against defendants Stein, Reynolds, Chamberlain, Bennett, Early, and Tozi.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 3, 2019

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE